# 24-1250

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

STATE OF VERMONT,

*Plaintiff-Appellee,*

v.

3M COMPANY,

*Defendant-Appellant,*

E. I. DU PONT DE NEMOURS AND COMPANY;
THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC;
CORTEVA, INC.; and DUPONT DE NEMOURS, INC.,

*Defendant.*

On Appeal from the United States District Court
for the District of Vermont, No. 24-cv-19

## REPLY BRIEF FOR DEFENDANT-APPELLANT

Wajdi C. Mallat
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006

Michael A. Scodro
Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com

*Counsel for Defendant-Appellant 3M Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

I. 3M TIMELY REMOVED THE CASE. ...................................................3

    A. 3M Timely Removed The Case After Uncovering Its
       Connection To MilSpec CCL. .................................................4

    B. No Paper Triggered The 30-Day Removal Period......................6

        1. *Cutrone* forecloses Vermont's proposed exception to
           the bright-line rule. .............................................................7

        2. No paper provided the necessary factual predicates
           for removal on federal officer grounds. ..........................13

           a. The VTDEC Letter and courtesy email did
              not demonstrate removability..............................13

           b. 3M's discovery materials did not demonstrate
              removability. .......................................................17

           c. No other 3M records demonstrated the case's
              removability. .......................................................21

II. THE DISTRICT COURT HAS JURISDICTION OVER THE
    CASE UNDER 28 U.S.C. § 1442. ....................................................24

    A. 3M Alleged That The Case Relates To Its Production Of
       MilSpec CCLs For The Military................................................25

    B. There Is No Threshold Percentage Of Alleged Harm That
       Must Relate To The Defendant's Federal Act..........................29

CONCLUSION ...................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan,*
    986 F.3d 168 (2d Cir. 2021)................................................................26, 29

*Arizona v. Manypenny,*
    451 U.S. 232 (1981) ..................................................................................24

*Badilla v. Midwest Air Traffic Control Serv., Inc.,*
    8 F.4th 105 (2d Cir. 2021) ................................................................. 28-29

*Bailey v. Monsanto Co.,*
    176 F. Supp. 3d 853 (E.D. Mo. 2016)......................................................31

*Baker v. Atlantic Richfield Co.,*
    962 F.3d 937 (7th Cir. 2020) ............................................................. 30-31

*Brown v. Amchem Prods., Inc.,*
    2020 WL 1150223 (S.D.N.Y. Mar. 10, 2020)...........................................11

*City of Hoboken v. Chevron Corp.,*
    45 F.4th 699 (3d Cir. 2020) ......................................................................30

*Colorado v. Symes,*
    286 U.S. 510 (1932) ..................................................................................24

*Connecticut v. Exxon Mobil Corp.,*
    83 F.4th 122 (2d Cir. 2023) ......................................................... 26-27, 30

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.,*
    996 F.3d 243 (4th Cir. 2021) ....................................................................28

*Cutrone v. Mortg. Elec. Registration Sys., Inc.,*
    749 F.3d 137 (2d Cir. 2014)........................... 1-3, 6-9, 12-13, 16-18, 20-22

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
    574 U.S. 81 (2014) ......................................................................... 25-26, 29

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021)....................................................................17

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021) ........................................................................21

*Dugdale v. Nationwide Mutual Fire Ins. Co.*,
2006 WL 335628 (E.D. Va. Feb. 14, 2006) .............................................11

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ........................................................... 3-4, 9

*Garner v. Santoro*,
865 F.2d 629 (5th Cir. 1989) ............................................................. 27-28

*Graiser v. Visionworks of Am., Inc.*,
819 F.3d 277 (6th Cir. 2016) ....................................................................18

*Griffin v. JTSI, Inc.*,
2009 WL 8761211 (D. Haw. July 28, 2009)..............................................28

*LaForge v. ECC Operating Servs.*,
2010 WL 497657 (E.D. La. Feb. 5, 2010) ................................................28

*Levy v. A. O. Smith Water Prod. Co.*,
2012 WL 2878140 (S.D.N.Y. July 13, 2012)............................................12

*Maguire v. Hughes Aircraft Corp.*,
725 F. Supp. 821 (D.N.J. 1989)................................................................28

*McLaren v. UPS Store Inc.*,
32 F.4th 232 (3d Cir. 2022) ........................................................................9

*Moltner v. Starbucks Coffee Co.*,
624 F.3d 34 (2d Cir. 2010)...........................................................................8

*Nessel v. Chemguard, Inc.*,
2021 WL 744683 (W.D. Mich. Jan. 6, 2021)............................................27

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*New Mexico ex rel. Balderas v. Monsanto Co.*,
454 F. Supp. 3d 1132 (D.N.M. 2020) ........................................................24

*Orange Cnty. Water Dist. v. 3M Co.*,
2022 WL 605630 (9th Cir. Mar. 1, 2022) ......................................... 15-16

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016).....................................................................9

*Pezzo v. AIR & Liquid Sys. Corp.*,
2021 WL 2852036 (S.D.N.Y. July 8, 2021)...............................................11

*Puerto Rico v. Express Scripts, Inc.*,
Nos. 23-1612 & 23-1613 (1st Cir. Oct. 18, 2024) ........................ 24-25, 28

*Railey v. Sunset Food Mart, Inc.*,
16 F.4th 234 (7th Cir. 2021)................................................................. 9-11

*Ramey v. Martin-Baker Aircraft Co. Ltd.*,
874 F.2d 946 (4th Cir. 1989) ................................................................28

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) ........................................................................24, 31

**Statutes**

28 U.S.C. § 1442(a)(1) ................................................................. 5, 17, 24-31

28 U.S.C. § 1446(b)........................................................................... 7-9

28 U.S.C. § 1446(b)(1) ...................................................................... 7-8

28 U.S.C. § 1446(b)(3) ...........................................................3-4, 7-8, 13, 17

iv

## INTRODUCTION

3M Company removed this case to federal court after discovering the facts supporting federal officer jurisdiction through its own investigations into a facility it sold decades earlier. In July 2023, 3M served an amended discovery response informing Vermont that 3M had identified records indicating that it may have manufactured PFAS-containing products at the Rutland facility. In October 2023, Vermont's environmental agency opened an unrelated regulatory matter and sent the VTDEC Letter directing 3M and the Rutland facility's current owner to promptly investigate the possibility of PFAS contamination at the Rutland facility. 3M complied, and over the course of further investigation, 3M learned from a former employee that from 1973-1975 it made CCLs at the Rutland facility pursuant to a MilSpec requiring the use of PTFE and that the resulting waste was disposed of at a site at issue in this case. 3M promptly removed the case when it uncovered those jurisdictional predicates.

Vermont's argument that 3M's removal was untimely misstates the law and misconstrues the facts. The law on the timing of removal is clear. Under the "bright line rule" laid out in *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, 749 F.3d 137 (2d Cir. 2014), the 30-day removal period is triggered only if the plaintiff provides a paper offering "specific and

unambiguous notice that the case satisfies federal jurisdictional require-
ments." *Id.* at 146. The defendant need not "consider material outside of"
the plaintiff's papers or "investigate whether a case is removable." *Id.* at
143, 145. If no plaintiff's paper triggers the 30-day period, the defendant
may remove a federal officer case at any time "based on its own investiga-
tion," as 3M did here. *Id.* at 148. Vermont tries to chip away at *Cutrone* by
arguing that a defendant's obligation to remove within 30 days is triggered
by information within the defendant's control when that information per-
tains to a federal defense. But there is no support for Vermont's proposition
that *Cutrone*'s bright-line rule applies only to a limited subset of federal
jurisdictional predicates. That alone sinks Vermont's argument.

Even if Vermont's legal theory were correct, which it is not, removal
still would be timely. The district court held that the 30-day removal period
began when Vermont's counsel sent a courtesy email forwarding the
VTDEC Letter. But at that time, 3M had not yet uncovered facts necessary
for it to plausibly assert federal officer jurisdiction—that it made CCLs at
the Rutland facility pursuant to a MilSpec requiring the use of PTFE. The
discovery materials and other records Vermont cites likewise did not supply
those critical facts. And none of these documents qualifies as a "paper" that
can trigger the removal period in any event. 3M simply did not uncover the

jurisdictional predicates for removal until conducting its own investigation into the Rutland facility.

At a minimum, this Court should reverse the district court's timeliness holding. But Vermont does not disagree that this Court also should address the merits of the underlying jurisdictional issue. The Court should hold that 3M's removal notice satisfies the requirements for pleading federal officer jurisdiction.

## ARGUMENT

## I.    3M TIMELY REMOVED THE CASE.

Generally, a defendant may remove a case on federal officer grounds after uncovering through its own investigation that the case is removable. 3M Br. 23-24. Section 1446(b)(3) establishes a 30-day limitation on removal when the plaintiff provides a "paper from which it may first be ascertained that the case is . . . removable." 28 U.S.C. § 1446(b)(3). Under this Court's "bright line rule," the paper must "explicitly demonstrate[] removability" to trigger the 30-day period. *Cutrone*, 749 F.3d at 143, 147. Here, Vermont provided no paper that explicitly demonstrated removability, and 3M removed the case based on its own investigation into the Rutland facility. And because 3M removed the case on federal officer grounds, the district court was required to "liberal[ly] interpret[] section 1446" in favor of removal.

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). But the court did the opposite, and in so doing it misapplied binding precedent and misconstrued the facts.

### A. 3M Timely Removed The Case After Uncovering Its Connection To MilSpec CCL.

3M removed this case after determining through its own investigation that federal officer jurisdiction exists. 3M Br. 25-29. Vermont focuses (Br. 24-26) on its counsel's email forwarding a "courtesy copy" of the VTDEC Letter. A597. According to Vermont, the email triggered the 30-day removal period because the Letter stated that the Rutland facility "may have" used or manufactured PFAS that generated waste transported to the Rutland landfill. A598. Not so. Even if the email qualified as a "paper" under Section 1446(b)(3)—and it does not, pp. 14-16, *infra*—3M still had to investigate to uncover the other factual predicates needed to remove on federal officer grounds.

Specifically, after the VTDEC Letter directed 3M and the facility's current owner to investigate the Rutland facility, A187, 3M interviewed Joseph Cesaro, a former 3M employee who worked at the facility. 3M Br. 13. Mr. Cesaro indicated that from 1973-1975, 3M made CCLs at the Rutland facility using the dielectric substrate PTFE. 3M Br. 27. As Vermont acknowledges (Br. 23 n.7), there are other dielectric substrates, so 3M had

4

to determine whether the Rutland facility in fact used PTFE to make CCLs. Mr. Cesaro also explained that the Rutland facility made most of the CCLs for the federal government in compliance with a MilSpec—a critical fact not contained in the VTDEC Letter. 3M Br. 27. Based on that information, 3M purchased a copy of a 1971 MilSpec for CCL from a third-party vendor and confirmed that it required the use of PTFE. *Id.* 3M provided the MilSpec to Mr. Cesaro, who determined that it was the MilSpec pursuant to which 3M made CCLs at the Rutland facility. *Id.* Mr. Cesaro further stated that this CCL production resulted in landfill waste. *Id.* at 27-28.[1]

3M needed to uncover those facts to plausibly allege that the case is "for or relating to" its manufacture of CCLs for government use based on detailed military specifications, 28 U.S.C. § 1442(a)(1), and that it has a colorable federal government contractor defense. 3M Br. 28. The VTDEC Letter could not have triggered the running of the 30-day removal period because it did not convey those facts.

---

[1] Vermont confuses (Br. 25 n.8) the timing of 3M's investigation. In July 2023, 3M located and produced records on the Rutland facility. 3M Br. 10-11. In October 2023, 3M received the VTDEC Letter. *Id.* at 11-12. In early November 2023, 3M interviewed Mr. Cesaro, who explained that the Rutland facility made CCLs pursuant to a MilSpec. *Id.* at 13. On November 17, 2023, 3M purchased a copy of the MilSpec from a third-party vendor. *See* A302-50. On December 5, 2023, Mr. Cesaro reviewed the MilSpec. A613 ¶ 9. On January 3, 2024, 3M removed the case. A5.

Vermont suggests (Br. 14) that the timing of removal was strategic. But 3M removed the case soon after interviewing Mr. Cesaro and purchasing a copy of the 1971 MilSpec, and Mr. Cesaro confirmed that the Rutland facility made CCLs for military use pursuant to the 1971 MilSpec. 3M Br. 14-15, 28. More to the point, *Cutrone* is clear that the 30-day removal period is "not triggered" if the defendant has to "consider material outside of the complaint or other applicable documents for facts giving rise to removability." 749 F.3d at 145. Here, the VTDEC Letter "did not reveal on its face that there was a sufficient basis for" federal officer jurisdiction, so 3M permissibly removed when its "own investigation yield[ed] evidence of removability." *Id.* at 147.

## B. No Paper Triggered The 30-Day Removal Period.

Vermont provided no paper that triggered the 30-day removal period by explicitly demonstrating removability. *Cutrone* precludes Vermont's proposed exception to that rule for situations in which removability depends on information concerning a federal defense that is within the defendant's control. Regardless, neither a qualifying paper nor 3M's own business records contained the factual predicates for removal, which 3M uncovered by independently investigating the Rutland facility.

### 1. *Cutrone* forecloses Vermont's proposed exception to the bright-line rule.

*Cutrone* held that a plaintiff's pleading or other paper triggers the removal period under Section 1446(b)(3) only if it "explicitly demonstrate[s] removability" and that a defendant need not "investigate whether a case is removable" even by "examin[ing] . . . its records." 749 F.3d at 143, 145, 147. That "bright line rule," *Cutrone* explained, requires "plaintiffs to assume the costs associated with their own indeterminate pleadings." *Id.* at 144. Vermont attempts to erase that bright line. It argues that a plaintiff's pleadings or other papers may trigger the 30-day clock by alleging only those factual predicates for removal that are "within the plaintiff's control" and not predicates about a federal defense that are "within the *defendant*'s control." Br. 3-4, 27. There is no support for that carveout.

First, the text of Section 1446(b) does not support Vermont's position. The statute provides that the 30-day removal period begins if the defendant receives either "a copy of the initial pleading" and "the case stated by th[at] initial pleading is . . . removable" or "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3). The requirement that the plaintiff's "paper" allege the necessary federal jurisdictional predicates to make removability "ascertain[able]" applies across the board.

7

The statute does not distinguish among predicates based on the jurisdictional requirement at issue or the party that "controls" the underlying information.

This Court's precedent likewise precludes Vermont's theory. *Cutrone* interpreted Section 1446(b) and held that "[i]f removability is not apparent from the allegations of an initial pleading or subsequent document, the 30-day clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered." 749 F.3d at 143. *Cutrone* was clear that information within a defendant's "control" does not trigger the 30-day removal period: A "defendant is not required to consider material outside of the . . . applicable documents for facts giving rise to removability," much less "perform an examination of its records" to identify facts that support removal. *Id.* at 145 (citing *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010)). *Cutrone* thus held that courts should not "inquire into what a particular defendant may or may not subjectively know." *Id.* at 143. Yet that is precisely what Vermont proposes in arguing that a plaintiff's paper need not allege facts "within [a] defendant's control." Br. 3. *Cutrone* forecloses that argument.[2]

---

[2] Vermont also suggests (Br. 26-27, 32 n.10) that *Cutrone*'s holding is limited to cases under the Class Action Fairness Act. But as 3M explained (Br. 38-39), *Cutrone* interpreted Section 1446(b), which applies to all removals.

8

The other courts of appeals to consider this issue (not "only two cases," VT Br. 30) likewise have uniformly held that "§ 1446(b)'s text dictates that the thirty-day clocks are triggered by either the four corners of the initial complaint or documents a defendant receives, and not by what the defendant subjectively knew or the documents in its possession." *McLaren v. UPS Store Inc.*, 32 F.4th 232, 241 (3d Cir. 2022); *see id.* at 239 & n.4 (citing *Cutrone* and other decisions). For example, *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 816 n.10 (3d Cir. 2016), held that an aircraft manufacturer that removed on federal officer grounds "simply was not required" to search "its own records" to determine that it made the "specific aircraft [the plaintiff's husband] was working on." Examples of similar cases abound. *Durham*, 445 F.3d at 1252-53; *see also* 3M Br. 24-25, 33-34 (collecting cases).

In response, Vermont cites (Br. 27-30) a Seventh Circuit decision and unpublished remand orders. But *Cutrone*—and not those cases—is controlling. Nor do those cases support Vermont's position in any event. First, Vermont misreads *Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234 (7th Cir. 2021). There, an employee brought a putative class action against a small Illinois grocery store. *Id.* at 237. Two years into the litigation, the store removed in part based on the theory that a federal statute preempted the claims because the employee was a union member. *Id.* The district court

9

remanded the case as untimely removed. The court rejected the store's argument that the 30-day removal period began when the employee served an interrogatory response confirming her union membership. *Id.*

The court of appeals affirmed. But contrary to Vermont's argument, the court did not hold that the store was required to "check[] its own records" to determine whether the employee was a union member. Br. 28. Rather, the store admitted at oral argument that information on the face of the complaint—including the employee's name, dates of employment, job titles, and work locations—was alone "sufficient to determine . . . that [the employee] was represented by a union." *Railey*, 16 F.4th at 241. Further, the proposed class definition encompassed all of the store's Illinois employees, "many, if not most, of whom" were union members. *Id.* So the complaint itself gave the store "everything necessary to recognize that" the claims were preempted. *Id.*

In fact, the Seventh Circuit warned against reading its decision in *Railey* "to impose any meaningful burden on defendants" and reaffirmed its prior holding that courts should not engage in a "fact-intensive inquiry about what the defendant subjectively knew or should have discovered." 16 F.4th at 241. *Railey* simply stands for the uncontroverted point that a corporate defendant is held to information that it can discern with "hardly any

effort," such as "its place of incorporation and principal place of business." *Id.* That is a far cry from Vermont's proposed rule holding a defendant to all factual "information within [its] control" necessary to allege a colorable federal defense, which would require a defendant to conduct an investigation of its own records and all "publicly available" information.[3] Br. 3.

Nor do the unpublished remand orders that Vermont cites (Br. 29-30 & n.9) support its proposition that the bright-line rule applies only to certain jurisdictional facts. As was the case in *Railey*, the defendants in those cases could ascertain removability "with hardly any effort," *Railey*, 16 F.4th at 241, because the plaintiffs' papers provided the necessary jurisdictional predicates. *See, e.g.*, *Pezzo v. AIR & Liquid Sys. Corp.*, 2021 WL 2852036, at *3 (S.D.N.Y. July 8, 2021) (plaintiffs' paper "clarified that [plaintiff] was exposed to asbestos-containing . . . equipment while serving aboard" a naval vessel); *Brown v. Amchem Prods., Inc.*, 2020 WL 1150223, at *5 (S.D.N.Y. Mar. 10, 2020) ("independent investigation was not necessary to ascertain removability" where plaintiff's paper identified the defendant's asbestos-

---

[3] *Dugdale v. Nationwide Mutual Fire Ins. Co.*, 2006 WL 335628 (E.D. Va. Feb. 14, 2006) (cited at VT Br. 30 n.9), is inapposite for the same reason. There, the court remanded because the defendant could easily discern removability based on "policy number and claims number that *it assigned*" where the plaintiff's demand letter "indicat[ed] the flood policy number and claims number" at issue. *Id.* at *6.

containing products to which he was exposed on a military vessel); *Levy v. A. O. Smith Water Prod. Co.*, 2012 WL 2878140, at *3 (S.D.N.Y. July 13, 2012) (defendant "had all the information needed to remove" where plaintiffs' paper identified "exposure on specific [military] ships, during a specific time period, and the type of products . . . which were manufactured by" defendant).

Finally, Vermont's policy arguments are meritless. Vermont contends that it would be "unfair to require a plaintiff" to "obtain discovery on all the details of the defendant's own products and operations" or "lay out . . . that the defendant has a merits defense." Br. 33. But plaintiffs need not take such actions. A plaintiff may trigger the 30-day removal period based on the "allegations of an initial pleading or subsequent document." *Cutrone*, 749 F.4th at 143. No discovery is needed to allege removal-supporting facts. Further, in federal officer cases, a plaintiff is not required to spell out a colorable federal defense but rather must "set[] forth facts from which" the defendant can "ascertain[]" that jurisdictional requirement. *Id.* at 145. To be sure, the bright-line rule requires the plaintiff to make allegations that "explicitly demonstrate[] removability," *id.* at 147, but *Cutrone* explained why that is preferable for courts and parties. 3M Br. 43-46 (discussing 749 F.3d at 144-45, 147). Further, the bright-line rule discourages the sorts of "evasive . . .

12

statements" in Vermont's complaint intended to preclude removal on federal officer grounds. *Cutrone*, 749 F.3d at 144; *see* 3M Br. 24, 43-45.

### 2. No paper provided the necessary factual predicates for removal on federal officer grounds.

Vermont did not provide 3M any "paper" that made removability "ascertain[able]." 28 U.S.C. § 1446(b)(3). Under *Cutrone*'s bright-line rule, that ends the inquiry into whether the 30-day removal period was triggered. But even under Vermont's proposed exception to *Cutrone*, 3M's removal would still be timely because the information demonstrating this case's removability was not "readily discern[able]" or "uniquely within [3M's] control." VT Br. 4, 27. Rather, 3M uncovered the key facts—that the Rutland facility made CCLs for the military pursuant to a MilSpec requiring the use of PFAS—during its independent investigation in response to the VTDEC Letter. In that situation, the 30-day removal period in Section 1446(b)(3) was not triggered.

### a. The VTDEC Letter and courtesy email did not demonstrate removability.

Neither the VTDEC Letter nor the courtesy email forwarding it was a "paper" generated within this litigation that could trigger the removal period under Section 1446(b)(3). 3M Br. 30-33. As the district court acknowledged, the Letter concerned an "unrelated regulatory matter," *i.e.*, VTDEC's

13

investigation of the Rutland facility. SPA 11. Vermont's counsel forwarded the Letter as a "courtesy" without mentioning the litigation, let alone stating that Vermont's claims relate to the Rutland facility. A597.

Vermont argues (Br. 34-36) that the courtesy email counted as a "paper" because it was correspondence between litigation counsel. That misses the point. All agree that correspondence from plaintiff's counsel may qualify as a "paper" if it is generated within the litigation. *See* 3M Br. 30-31. But the correspondence here—a courtesy email forwarding information about an unrelated regulatory matter—was not litigation-related. That the email's subject line included the case's name and docket number, VT Br. 35, does not change the fact that the email nowhere even hinted that the VTDEC Letter concerned Vermont's claims against 3M in this case. *See* 3M Br. 31.

Vermont is also incorrect (Br. 35-36) that 3M's response to the VTDEC Letter shows that the courtesy email was generated as part of this litigation. While it is true that 3M's Vermont counsel in this case signed 3M's response to the VTDEC Letter, VT Br. 36, counsel often wear different hats. 3M's Vermont counsel sent 3M's response to the VTDEC Director without making any reference to this case. A604. And the response confirmed the regu-

14

latory nature of the Letter by emphasizing 3M's "commit[ment] to regulatory compliance and to engaging in a productive dialogue" on the Rutland facility. *Id.* Vermont also notes (Br. 36) that 3M uncovered the predicates supporting removal only after broadening its investigation into the Rutland facility in response to the Letter. But that has no bearing on whether the Letter or email was litigation-related. 3M took those steps because the Letter directed 3M and the facility's current owner to "conduct an environmental investigation" at the Rutland facility and provide a plan for doing so within 15 days. A598.

Regardless, the VTDEC Letter and courtesy email did not provide the factual predicates necessary to remove the case on federal officer grounds. Vermont is incorrect that the VTDEC Letter definitively stated that "PFAS waste from the Rutland facility had contaminated" the Rutland landfill. Br. 1-2. Rather, the Letter speculated that the Rutland facility "*may have . . .* manufactured or used" PFAS-containing products. A598 (emphasis added).

On that score, the VTDEC Letter and courtesy email are comparable to the "paper" in *Orange County Water District v. 3M Co.*, 2022 WL 605630 (9th Cir. Mar. 1, 2022). *See* 3M Br. 32. The *Orange County* plaintiffs argued

that federal officer removal was untimely because a state court brief triggered the 30-day removal period. 2022 WL 605630, at *1. The brief stated that "perhaps[] some military installations in the Orange County area are 'potential sources of the' environmental contamination at issue" in the litigation. *Id.* The Ninth Circuit held that this vague causal statement did not "clearly and unequivocally apprise 3M of the information necessary to invoke the federal officer removal statute." *Id.* Likewise, the VTDEC Letter's conjecture that the Rutland facility "may have" used PFAS did not "explicitly demonstrate" that the facility used PFAS that ended up in the Rutland landfill. *Cutrone*, 749 F.3d at 147. In both cases, the defendant was left to "guess whether the plaintiff believed" that its injuries were attributable to PFAS that had emanated from a specific location. VT Br. 31.

Further, the Letter did not contain other factual predicates necessary to trigger the 30-day removal period, namely, that the Rutland facility made products for the military pursuant to a MilSpec requiring the use of PFAS. 3M Br. 25-29, 32-33; *see* pp. 4-5, *supra*. That information was necessary to show that the case is "relating to" 3M's acts "under color of [federal] office,"

28 U.S.C. § 1442(a)(1), and that 3M has a colorable federal government contractor defense. 3M Br. 25-29. The VTDEC Letter and courtesy email therefore did not explicitly demonstrate removability.[4]

### b. 3M's discovery materials did not demonstrate removability.

Recognizing the factual gaps in the VTDEC Letter and courtesy email, Vermont argues (Br. 20-26) that materials 3M produced in discovery filled in the missing details. Vermont is wrong both on the law and the facts.

Under the bright-line rule, discovery material produced by a defendant is irrelevant to the question whether a plaintiff provides a paper that

---

[4] Vermont is incorrect (Br. 31-32) that *Dietrich v. Boeing Co.*, 14 F.4th 1089 (9th Cir. 2021), held that a defendant can "ascertain" without this information that a case relates to its acts under the military and that it has a colorable federal government contractor defense, 28 U.S.C. § 1446(b)(3). There, the plaintiff's discovery response stated that her husband was exposed to asbestos from the defendant's product while serving in the military. *Dietrich*, 14 F.4th at 1095. In contrast, the VTDEC Letter did not indicate that the Rutland facility made military products. Regardless, *Dietrich* had no occasion to consider whether the discovery response made removability ascertainable because the defendant removed less than 30 days after receiving it and no earlier paper made the factual predicates "unequivocally clear and certain." *Id.*; *see Cutrone*, 749 F.3d at 146 ("[T]he moment a case becomes removable and the moment the 30-day removal clock begins to run 'are not two sides of the same coin.'"). Further, removal was based on several federal defenses, Appellant Br., *Dietrich v. Boeing Co.*, 2020 WL 1332368, at *15 (Mar. 12, 2020), and *Dietrich* did not opine on which, if any, were colorable.

makes removability clear. 3M Br. 33-34. A "defendant is not required to consider material outside of the . . . applicable documents for facts giving rise to removability"—and discovery produced by the defendant is not an "applicable document." *Cutrone*, 749 F.3d at 145. Vermont does not engage with that black-letter principle but rather argues that it is "unfair" to require a plaintiff to provide a paper containing information a defendant has produced. Br. 16, 27. But *Cutrone* is controlling, and in any event, it rejected Vermont's policy concern. *Cutrone* reasoned that the bright-line rule "discourages evasive or ambiguous statements by plaintiffs," whom the rule puts "in a position to protect themselves" by "provid[ing] to the defendant a document from which removability may be ascertained." 749 F.3d at 144, 147. Plaintiffs may not engage in post hoc flyspecking of a defendant's voluminous discovery production—in this case, millions of pages—in search of facts showing what 3M "discover[ed] through the course of litigation." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 284 (6th Cir. 2016).

Even if, contrary to settled law, documents 3M produced in discovery were relevant, those documents did not discuss all of the necessary jurisdictional predicates for federal officer removal—that 3M manufactured CCLs at the Rutland facility; 3M made those CCLs for military use; 3M conformed to a MilSpec in producing the CCLs; the MilSpec required the use of PTFE;

18

and waste from 3M's CCL production was disposed of at the Rutland landfill. 3M Br. 35-36. Vermont's arguments to the contrary misread the discovery documents.

First, Vermont misconstrues the undated press release about the Rutland facility. The press release stated only that 3M made CCLs used in electronics; that the microwave industry was previously concentrated in military markets but had since expanded to commercial markets; and that the Rutland facility's expansion put 3M in a position to offer more types of CCLs. 3M Br. 10-11, 35. The press release did *not* indicate that 3M made CCLs at the Rutland facility during "the very time period" when CCL production was concentrated in military markets, as Vermont suggests. VT Br. 21-22. The press release's statement on military markets was about "microwave output," not CCL production. A566. Besides, the press release stated that the military concentration ended in "the early 1970s," A566, and that the Rutland facility did not begin making CCLs until 1973, as 3M later uncovered, A612 ¶¶ 3-4.

More importantly, nothing in the press release stated, much less provided in clear and unequivocal terms, that 3M's CCL production at the Rutland facility was for the military or that 3M made those CCLs pursuant to a MilSpec requiring the use of PTFE. A566; *see* 3M Br. 25-29. Those factual

19

predicates were necessary to make federal officer removal clear and unequivocal. 3M Br. 27-28, 46-47. Indeed, the only document that Vermont cites for the fact that 3M "made MilSpec [CCLs] for . . . 'the federal government'" is the Cesaro declaration, Br. 21 n.5 (citing A613 ¶ 11), which postdates removal, A615.

Nor do any of the other discovery documents cited by Vermont discuss those jurisdictional predicates. Several disposal contracts indicated that certain waste from the Rutland facility had been disposed of at the Rutland landfill. A568-95. Vermont notes that the contracts did not include an "exception for CCL waste," Br. 21, but that does not "affirmatively and unambiguously reveal" that 3M manufactured CCLs pursuant to a MilSpec requiring the use of PTFE at the Rutland facility, much less that the contractors disposed of PFAS-containing waste from such CCL production. *Cutrone*, 749 F.3d at 144. Further, several of the contracts predate the 1973-1975 period when 3M made CCLs at the Rutland facility. A569, A576, A586, A594.

Vermont also argues, for the first time, that a 1963 document summarizing the subsidiaries and divisions in 3M's electrical products group and referencing CCLs shows that the Rutland facility made CCLs. Br. 22 (discussing SA-120). Vermont attached the document to its remand motion but

20

did not discuss it before the district court, so Vermont has forfeited any argument based on that document. *Cf. Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021) ("Merely typing out the key words or merely incanting the key phrase without offering any argument or explanation of the point to the district court is insufficient to preserve the issue for appeal." (quotations and alterations omitted)).

In any event, the 1963 document does not even mention the Rutland facility, which did not begin making CCLs until 1973, as 3M later uncovered during its independent investigation. A612 ¶¶ 3-4. The document thus did not "affirmatively and unambiguously reveal" that the Rutland facility made CCLs. *Cutrone*, 749 F.3d at 144. Further, as with the press release and disposal contracts, the 1963 document does not discuss the key jurisdictional predicates that 3M's CCL production at the Rutland facility was for the military and pursuant to a MilSpec requiring the use of PTFE.

### c. No other 3M records demonstrated the case's removability.

Vermont repeats the district court's conclusion that the jurisdictional predicates were "publicly available." Br. 23. But 3M explained (Br. 36-40) that the district court erred when it considered what 3M "knew" or "c[ould] be expected to be aware of." SPA 14-15. A defendant need not "consider material outside of the [plaintiff's] documents" or "investigate whether a case

21

is removable" by "consult[ing] its records." *Cutrone*, 749 F.3d at 143-45. Regardless, the AFFF litigation and undated press release cited by the district court nowhere suggest that the Rutland facility made CCLs for the military pursuant to a MilSpec requiring the use of PTFE. 3M Br. 40-41. Further, the MilSpec was not "publicly available," SPA 15, and even after purchasing a copy, 3M was able to remove the case only after its former employee confirmed that this was the MilSpec pursuant to which the Rutland facility made CCLs for the military. 3M Br. 41-42.

Vermont does not defend the district court's factual errors. Instead, Vermont argues that removability was clear and unequivocal based on two 1975 patents filed by 3M for products that complied with the MilSpec. Br. 22-23 (citing SA-174, SA-187). That argument fails on multiple grounds. To start, the patents are irrelevant to the timeliness inquiry because of the bright-line rule that a defendant need not "consider material outside of the [plaintiff's] documents" or "investigate whether a case is removable."[5] *Cutrone*, 749 F.3d at 143, 145. Regardless, the patents do not even mention the

---

[5] The complicated process by which Vermont identified the patents (Br. 23 n.6), along with the benefit of hindsight, confirm just how extensive an "independent investigation" 3M would have had to "perform" to identify them. *Cutrone*, 749 F.3d at 145.

Rutland facility, much less clearly and unequivocally establish that 3M produced CCLs there pursuant to a MilSpec requiring the use of PTFE. The patents simply do not provide the factual predicates necessary for federal officer jurisdiction in this case.

Vermont notes (Br. 22) that 3M objected to Vermont's deposition request on the patents. But that is also irrelevant. Vermont sought to depose a 3M corporate witness who could identify and provide details on "all patents [3M] holds or [has] held for any PFAS or PFAS-containing products" since "the 1940s." SA-130. Vermont did not specifically request information about the two 1975 patents or reference any MilSpecs. 3M's objection explained that Vermont's request was overbroad and disproportional, and that Vermont could obtain the requested information from the United States Patent and Trademark Office. SA-156. Nothing about Vermont's deposition request or 3M's objection indicates that 3M made CCLs for the military at the Rutland facility pursuant to a MilSpec requiring the use of PTFE. 3M uncovered that information only after conducting its own investigation regarding the facility, at which point 3M promptly removed the case. 3M Br. 25-29.

## II. THE DISTRICT COURT HAS JURISDICTION OVER THE CASE UNDER 28 U.S.C. § 1442.

3M properly removed the case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which courts must "liberally construe[]" in favor of removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)); *see* 3M Br. 46-58.

Vermont is wrong that comity principles support creating an exception to the liberal-construction requirement in federal officer cases "brought by a State." Br. 36-37. The Supreme Court has consistently applied that requirement in cases brought by states. *See, e.g.*, *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Colorado*, 286 U.S. at 517. That reflects the "basic purpose" of Section 1442(a)(1) "to protect the Federal Government" and "private person[s] act[ing] as . . . assistant[s] to a federal official" from the "interference with [federal] operations that would ensue were a State able" to sue "in a State court for an alleged offense against the law of the State" based on acts "within the scope of [federal] authority."[6] *Watson*, 551 U.S. at 150-51.

---

[6] Vermont cites (Br. 37) a remand order, which stated that courts "narrowly" construe Section 1442(a)(1) if the defendant is a "private company." *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1139 (D.N.M. 2020). But "the Supreme Court has long recognized that private parties may remove [on federal officer grounds] without imposing a heightened burden."

Regardless, however the Court construes Section 1442(a)(1), 3M satisfies the requirements for federal officer removal—it is a person within the meaning of the statute; it has plausibly pleaded a colorable federal defense; and the case relates to its actions under a federal officer producing and supplying MilSpec CCL to the military. 3M Br. 46-58. Vermont does not dispute that 3M satisfies the personhood and federal-defense requirements. Rather, Vermont argues (Br. 36-46) that the case does not relate to acts under a federal officer. Vermont claims that, to satisfy this requirement, 3M must allege specific direct sales of MilSpec CCL to the government. That argument has no basis in the federal officer removal statute or the case law interpreting it. Further, Vermont's assumption that nearly all of its alleged harm came from other sources of PFAS is likewise unsupported and immaterial in any event.

## A. 3M Alleged That The Case Relates To Its Production Of MilSpec CCLs For The Military.

The removal notice contains "plausible allegation[s]" that the case relates to 3M's production of MilSpec CCLs for the military. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see* 3M Br. 47-

---

*Puerto Rico v. Express Scripts, Inc.*, Nos. 23-1612 & 23-1613, slip op. at 25 n.7 (1st Cir. Oct. 18, 2024) (citing decisions).

49. Nothing more is required for removal. But 3M went even further, submitting evidence in the district court to support those allegations.[7] 3M Br. 51-52.

Vermont does not contest the truth of those allegations. Rather, Vermont contends (Br. 41-42) that the allegations are insufficient to show that 3M "act[ed] under" the government, 28 U.S.C. § 1442(a)(1), because the removal notice did not allege, for example, specific direct sales of MilSpec CCL from 3M to the military. But as 3M explained (Br. 53), there is no such requirement. A defendant need only plausibly allege that the actions supporting removal "involve[d] an effort to *assist*, or to help *carry out*, the duties or tasks" of a federal officer, which often includes "subjection, guidance, or control." *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 143 (2d Cir. 2023).

3M did so here by alleging that it made CCLs pursuant to the military's "reasonable precise specifications" in the MilSpec, A22 ¶ 41; the CCLs were "subject to various tests by the U.S. Army," A19 ¶ 35; the CCLs then

---

[7] Vermont is incorrect that 3M had to submit "proof" to support the allegations in the removal notice. Br. 41-42. Under binding precedent, a removal notice need include "only . . . plausible allegation[s]," *Dart Cherokee*, 574 U.S. at 89, which the court "must credit," *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021); 3M Br. 51-52. Courts have required "proof" of removal allegations only in limited circumstances when a plaintiff presents contrary evidence, which Vermont has not done. 3M Br. 52.

were "approved for use by the military and for inclusion on the Department of Defense's qualified products list," *id.*; and 3M then "sold the [CCLs] for use by the government," A22 ¶ 41. 3M thus did not merely "produce an item that [the government] needs"; it acted under military "supervision" and "guidance" by making a product according to precise government requirements to qualify for military procurement. VT Br. 39 n.16 (quoting *Exxon Mobil*, 83 F.4th at 144). Courts uphold removal in comparable circumstances where defendants made products for government use pursuant to MilSpecs. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021).

Further, Vermont is incorrect that federal officer removal is never available to subcontractors. Vermont cites several remand orders that noted a defendant's subcontractor status (Br. 38-39 n.15), but most of those orders did not hold that there is a special federal officer removal test for subcontractors. Rather, the relevant question under Section 1442(a)(1)—as in other removal cases—is whether the private-party defendant "meet[s] the conditions" for federal officer removal regardless of whether it has a "direct contract" with the government. *Garner v. Santoro*, 865 F.2d 629, 637 n.13 (5th Cir. 1989).

Applying that test, courts regularly uphold federal officer removal when a government subcontractor is involved. *See Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 112, 120 (2d Cir. 2021) (defendant "operated . . . as an approved subcontractor" and "satisfies all of the requirements of section 1442(a)(1)"); *see also, e.g.*, *Puerto Rico*, slip op. at 11 n.2 ("[T]he absence of a direct contractual relationship with the federal government is not a bar to removing an action under § 1442(a)(1)." (quoting *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021)); *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 947, 951 (4th Cir. 1989) (defendant manufactured the product at issue "as a subcontractor" so the government contractor "defense insulate[d] [it] from liability"); *Garner*, 865 F.2d at 637 n.13 (doubting plaintiff's argument that subcontractor defendant "cannot assert the government contractor defense" simply because "the Navy does not have a direct contract with" it); *LaForge v. ECC Operating Servs.*, 2010 WL 497657, at *1-2 (E.D. La. Feb. 5, 2010) (defendant's "status as a subcontractor d[id] not preclude it from relying on government contractor immunity"); *Griffin v. JTSI, Inc.*, 2009 WL 8761211, at *12 n.35 (D. Haw. July 28, 2009) ("Subcontractors are afforded the same protections under the government contractor defense as prime contractors."); *Maguire v. Hughes Aircraft Corp.*, 725 F. Supp. 821, 825 (D.N.J.

1989), *aff'd*, 912 F.2d 67 (3d Cir. 1990) ("The government contractor defense can apply to subcontractors, as well as general contractors.").

Consider this Court's holding in *Badilla*, where the military was "in charge" of and "directed" the actions of a subcontractor. 8 F.4th at 112. Vermont argues that *Badilla* is distinguishable (Br. 38-39), but Vermont fails to explain how the military's precise instructions to 3M are distinct from the direction in *Badilla* to follow "a hierarchy of rules and regulations." 8 F.4th at 112. The subcontractors there were instructed to direct air traffic based on "[d]ocuments or instructions issued by" the federal officers. *Id.* Here too, the military provided precise requirements for 3M's manufacture of CCLs for military use.

## B. There Is No Threshold Percentage Of Alleged Harm That Must Relate To The Defendant's Federal Act.

Finally, Vermont argues that this case does not "relat[e] to" 3M's production of MilSpec CCLs at the Rutland facility, 42 U.S.C. § 1442(a)(1), because the resulting PFAS waste is "a tiny piece" of its alleged harm. Br. 43-46. But removability is assessed based on the defendant's "plausible allegation[s]," *Dart Cherokee,* 574 U.S. at 89, which the court "must credit," *Agyin*, 986 F.3d at 175. The Court therefore must credit 3M's plausible allegations that its production of MilSpec CCLs at the Rutland facility for the federal government relate to this case notwithstanding Vermont's contrary theory.

In any event, Section 1442(a)(1) does not condition removability on some threshold amount of harm. 3M Br. 54-55. As the Seventh Circuit has recognized (in a case on which Vermont relied in the district court), there is "no support in the statute or precedent for this rule." *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020). Vermont is seeking damages for PFAS contamination that plausibly came from 3M's MilSpec CCL production for the military. VT Br. 43. The case thus "relat[es] to" that production. 42 U.S.C. § 1442(a)(1).

No case that Vermont cites (Br. 44-46) had occasion to consider the question whether some minimum amount of the alleged harm must "relat[e] to" the defendant's federal acts, 42 U.S.C. § 1442(a)(1). Rather, those cases held that a suit was not removable when there was no causal connection *at all* between the defendants' federal acts and the plaintiffs' harms. *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2020) (plaintiff legitimately "carve[d] out" any federal acts from the case); *Exxon Mobil*, 83 F.4th at 145 (plaintiffs' claims bore no relation to the defendant's "business practices . . . subject to federal control and supervision"). In contrast, Vermont acknowledges that 3M's production of MilSpec CCLs relates to its environmental tort claims (Br. 43) and simply argues that any resulting PFAS con-

tamination represents too "small [a] portion" of its total harm to justify federal officer removal, *id.* at 44. But nothing in Section 1442(a)(1) supports that proposition, and courts must "liberally construe[]" that provision in favor of removal. *Watson*, 551 U.S. at 147.

Regardless, Vermont provides no evidence to support its theory (Br. 43-44) that 3M's production of MilSpec CCL resulted in a "tiny piece" of the PFAS contamination at issue. Rather, Vermont simply assumes that PFAS-related waste from MilSpec CCL "must be a small portion" of the waste disposed at the Rutland landfill—which must represent a "small portion" of the total PFAS at issue—because there are other locations where Vermont alleges harm.[8] Br. 44. In any event, determining the source of PFAS is precisely the type of "difficult causation question that a federal court should be the one to resolve." *Baker*, 962 F.3d at 945 n.3.

---

[8] The lone remand order that Vermont cites to embrace a "*de minimis* argument" involved a "novel theory of liability" not present here and, even then, the plaintiff introduced evidence that only "one one hundredth of one percent" of the chemical at issue was sold to the government. *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 863, 870 (E.D. Mo. 2016). In contrast, Vermont presents no evidence whatsoever to support its series of speculative assumptions.

## CONCLUSION

The Court should reverse and remand with instructions that the district court recall its remand to the state court.

Dated: October 18, 2024        Respectfully submitted,

                                        *s/ Michael A. Scodro*

Wajdi C. Mallat                             Michael A. Scodro
MAYER BROWN LLP                    Avi M. Kupfer
1999 K Street NW                    MAYER BROWN LLP
Washington, DC 20006             71 South Wacker Drive
                                          Chicago, IL 60606
                                        (312) 782-0600
                                        mscodro@mayerbrown.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)   complies with the type-volume limitation of Circuit Rule 32.1(a)(4)(A) because it contains 6,989 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)   complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.


Dated:  October 18, 2024               *s/ Michael A. Scodro*
                                        Michael A. Scodro

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on October 18, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


 s/ *Michael A. Scodro*
Michael A. Scodro