24-1250-cv
Vermont v. 3M Co.

# United States Court of Appeals
# for the Second Circuit

August Term, 2024

(Argued: February 18, 2025      Decided: August 19, 2025)

Docket No. 24-1250-cv

_____

STATE OF VERMONT,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*,

E. I. DU PONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, CORTEVA, INC., DUPONT DE NEMOURS, INC.,

*Defendants.*
_____

Before:

    CABRANES, LOHIER, and SULLIVAN, *Circuit Judges*.

    The State of Vermont sued 3M Company in state court, alleging that 3M's production of so-called "forever chemicals" contaminated the State's natural resources. 3M removed the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), asserting a federal defense based on its manufacture of products pursuant to military specifications. The United States

CERTIFIED COPY ISSUED ON 08/19/2025

District Court for the District of Vermont (Sessions, *J.*) remanded the case to state court, finding that removal was untimely under 28 U.S.C. § 1446(b)(3) because 3M filed its notice of removal more than thirty days after receiving correspondence from Vermont that allegedly made the action's removability ascertainable. We conclude that Vermont's correspondence did not contain information from which removability under the federal officer removal statute could be ascertained, and therefore that 3M's notice of removal was timely. **VACATED** and **REMANDED**.

> MICHAEL A. SCODRO, Mayer Brown LLP, Chicago, IL (Avi M. Kupfer, Mayer Brown LLP, Chicago, IL, Wajdi C. Mallat, Mayer Brown LLP, Washington, DC, *on the brief*), *for Defendant-Appellant*.
>
> MATTHEW F. PAWA, Seeger Weiss LLP, Newton Centre, MA (Laura B. Murphy, Vermont Office of the Attorney General, Montpelier, VT, *on the brief*), *for Plaintiff-Appellee*.

LOHIER, *Circuit Judge*:

An action "commenced in a State court" is removable to federal court for any number of reasons, including if the action is against a federal officer "for or relating to any act under color of [federal] office" and the federal officer asserts a federal defense. 28 U.S.C. § 1442(a)(1); *see Mesa v. California*, 489 U.S. 121, 129 (1989). Under 28 U.S.C. § 1446(b)(3), a defendant sued in state court may remove the suit to federal court by filing a notice of removal "within thirty days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become

2

removable." The question presented in this case is when the defendant, 3M Company, could first have "ascertained" within the meaning of § 1446(b)(3) that the lawsuit brought against it by the State of Vermont could be removed to federal district court.

Contrary to the District Court's order, we conclude that the notice of removal in this case was filed within thirty days after it could "first be ascertained" that the case was removable under the federal officer removal statute. We therefore vacate the order and remand for further proceedings.

I

Vermont sued 3M in state court, alleging that 3M's production of what have popularly become known as "forever chemicals" had contaminated Vermont's water, wildlife, soil, and sediment. The two contaminated sites relevant to this appeal are the Rutland City landfill, which Vermont long alleged was contaminated, and 3M's manufacturing facility in Rutland (the "Rutland facility").

The lawsuit, filed in 2019, first identified the Rutland City landfill as an allegedly contaminated site in 2021. 3M's Rutland facility came into the picture in July 2023, when 3M submitted a response to Vermont's request to identify any

3

of its facilities within the State that manufactured, used, or stored forever chemicals known as per- and polyfluoroalkyl substances, or "PFAS."  3M disclosed that "from 1955 to 1975 it, or one of its affiliates, owned a manufacturing facility in Rutland, Vermont at which PFAS-containing products may have been manufactured or otherwise used at some times."  App'x 563–64.  The company later produced an undated (though apparently decades old) press release announcing that the Rutland facility created "copper coated laminates, which are used extensively in the manufacture of microwave strip lines for radar antenna pulse transmissions and other applications."  App'x 566.  "[U]ntil the early 1970's," the press release explained, "microwave industry output was concentrated primarily in military markets."  App'x 566.

Separate from this litigation, by letter dated October 23, 2023, the Vermont Department of Environmental Conservation ("DEC") notified 3M of its status as a "potentially responsible party" and its obligation "to conduct an environmental investigation at" the Rutland facility.  App'x 598.  The letter explained that "[w]aste materials from the [Rutland] facility were transported between 1955 and

4

1975 up to five days per week to the Rutland City [l]andfill, where PFAS has adversely impacted groundwater quality."[1]  App'x 598.

The DEC letter to 3M did not surface in the present litigation until a week later, on November 2, 2023, when Vermont's counsel in this case emailed a "courtesy copy" of the letter to his counterpart at 3M.  The email's subject line had the caption of the instant case, as follows: "RE: State of Vermont v. 3M Co., et al., No. 547-6-19 Cncv / VTDEC letter."  App'x 597.  Neither the email nor the DEC letter referenced 3M's manufacture of copper-clad laminates at the facility pursuant to a military specification requiring the use of a type of PFAS.

After receiving the DEC letter, 3M broadened its investigation of the Rutland facility.  It tracked down former employees, obtained historical

---

[1] The critical paragraph in the DEC letter reads in full as follows:

> The Waste Management & Prevention Division (WMPD) of the Vermont Department of Environmental Conservation (DEC) has become aware that 3M Company ("3M") owned and operated the facility located at 477 Windcrest Road in Noth Clarendon, Vermont from 1955 to 1975, during which time per-and polyfluoroalkyl substances (PFAS) containing products may have been manufactured or used. Waste materials from the facility were transported between 1955 and 1975 up to five days per week to the Rutland City [l]andfill, where PFAS has adversely impacted groundwater quality and has been identified in exceedance of Vermont Groundwater Enforcement Standards.

App'x 598.

5

specifications for the facility, purchased a copy of a discontinued military specification from a third-party vendor, and reconstructed decades-old operating procedures. Ultimately, 3M was "able to determine that when it owned and operated the Rutland [f]acility, it manufactured (among other products) copper-clad laminates." App'x 11. The laminates, it also determined, were "produced in accordance with" applicable United States military specification requirements and therefore contained a type of PFAS. App'x 11, 15–16. 3M's investigation also revealed that scrap material from the manufacture of the laminates containing PFAS was "disposed of as landfill waste," presumably in the Rutland City landfill. App'x 614.

On December 18, 2023, Vermont effectively confirmed that it sought relief in this litigation related to contamination from PFAS at the Rutland City landfill. And on January 3, 2024 (within a month of completing its investigation and of Vermont's confirmation), 3M removed this action to federal court under the federal officer removal statute, predicated on its assertion of a colorable federal defense to Vermont's claims arising from the military specification requirements, pursuant to 28 U.S.C. § 1442(a)(1). *See Mesa*, 489 U.S. at 129.

The United States District Court for the District of Vermont (Sessions, J.) remanded the case to state court upon finding 3M's notice of removal untimely under § 1446(b)(3) because it had been filed more than thirty days after 3M's counsel received Vermont's email forwarding the DEC letter. That email, Judge Sessions determined, contained enough information from which it could "be ascertained" that the case against 3M was removable under the federal officer removal statute. Judge Sessions added that "3M knew that the Rutland [f]acility made products associated with the military more than [thirty] days before [it filed] its notice of removal." Spec. App'x 9. Having determined that removal was untimely, the District Court understandably declined to address whether 3M had adequately alleged federal officer removal jurisdiction.

II

We have jurisdiction to review the District Court's remand order under 28 U.S.C. § 1447(d), which permits appellate review of "an order remanding a case to the State court from which it was removed pursuant to" § 1442(a)(1), the federal officer removal statute. *See Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132, 138 (2d Cir. 2024). "We review an appeal from an order of remand *de novo*." *Agyin v. Razmzan*, 986 F.3d 168, 173–74 (2d Cir. 2021).

7

On appeal, the parties ask us to resolve their dispute about removability in the broadest terms by significantly expanding or limiting the scope of § 1446(b)(3). We elect to answer a narrower question: whether the basis for federal officer removal could "be ascertained" from Vermont's email and the attached DEC letter in this particular case. 28 U.S.C. § 1446(b)(3). We conclude that it could not, and we therefore vacate and remand for further proceedings.

A

Our main precedents relating to removal under 28 U.S.C. § 1446(b) are expressly limited to specific jurisdictional contexts. In *Moltner v. Starbucks Coffee Co.*, we specifically addressed diversity jurisdiction, holding that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that *explicitly specifies* the amount of monetary damages sought," as required under the statute that governs diversity jurisdiction. 624 F.3d 34, 38 (2d Cir. 2010) (emphasis added); *see* 28 U.S.C. § 1332(a). And in *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, we extended this "bright-line rule" to cases in which federal court jurisdiction is available under the Class Action Fairness Act (CAFA), holding that "in CAFA cases, the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading

8

or other document that *explicitly specifies* the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained." 749 F.3d 137, 145 (2d Cir. 2014) (emphasis added). This case presents a somewhat novel issue. Neither *Moltner* nor *Cutrone* addressed when the basis of removal "may first be ascertained" in the context of the federal officer removal statute. 28 U.S.C. § 1446(b)(3). And unlike those cases, which involved jurisdictional facts within the plaintiff's control to specify, the case before us involves jurisdictional facts that neither party clearly controls.

3M argues that its notice of removal was timely for several reasons. Among other things, it contends that Vermont's email is not an "other paper" within the meaning of § 1446(b)(3) that could trigger the thirty-day removal deadline. It also insists that the email failed to explicitly specify that the case against it was removable, as *Cutrone* contemplates in the context of CAFA cases. *See Cutrone*, 749 F.3d at 145. And 3M further contends that the District Court erred in considering what 3M knew or should have known beyond the information contained in the email, based on its prior ownership and operation of the Rutland facility.

There is no need for us to define the meaning of "other paper" in § 1446(b)(3) or to extend the "explicitly specifies" test of *Moltner* and *Cutrone* in order to resolve this appeal. 3M's removal under the federal officer removal statute is premised on its production of copper-clad laminates at the Rutland facility in accordance with a military specification. Neither Vermont's email nor the DEC letter mentions 3M's production of copper-clad laminates or otherwise suggests a connection to a federal government contract or a military specification. If we define the term "ascertain" as the relevant dictionaries do to mean "to find out or learn with certainty," *Ascertain*, Merriam Webster's Collegiate Dictionary (11th ed. 2003), or "[t]o discover with certainty, as through examination or experimentation," *Ascertain*, The American Heritage Dictionary of the English Language (5th ed. 2011), then Vermont's correspondence with 3M did not come close to making a federal officer basis for removal under § 1442(a)(1) "ascertainable" to 3M. Indeed, Vermont has not proffered a reasonable definition of "ascertainable" under which it prevails. Under the circumstances of this case, the relevant jurisdictional information could not be "found out or learned with certainty" from Vermont's email or the DEC letter,

but instead could be discovered by 3M only after conducting its own extensive investigation.

Instead, Vermont focuses on the argument that 3M knew or should have known of the possible basis for removal when it received the DEC letter in November 2023. But both the degree of inquiry notice as to potentially relevant jurisdictional facts and the difficulty of inquiry in response to that notice bear on when the basis of removal "may first be ascertained"—and our review of the record convinces us that this is not a case where the jurisdictional facts relevant to removal were within the defendant's *ready* knowledge and control—for example, its place of incorporation or principal place of business. *See Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 241 (7th Cir. 2021) (holding that "when it comes to removal, a defendant can be held to information about its own operations that it knows or can discern *with ease*") (emphasis added). Instead, 3M understood that it might have a basis to assert federal officer removal jurisdiction only after it had investigated its historical business practices at the Rutland facility and the State had confirmed that it sought relief related to PFAS contamination at the Rutland City landfill.

11

B

In summary, Vermont's email and the DEC letter did not provide nearly enough information for 3M to ascertain that the case against it was removable under the federal officer removal statute. Contrary to the District Court's ruling, therefore, the thirty-day period for 3M to file its notice of removal did not begin to run on November 2, 2023, when 3M received the email.

This leaves open the question whether 3M has plausibly alleged federal officer removal jurisdiction— a question we decline to address. The District Court did not reach the issue and should do so in the first instance on remand. *See Colavito v. N.Y. Organ Donor Network, Inc.*, 486 F.3d 78, 80 (2d Cir. 2007).

## CONCLUSION

For the foregoing reasons, the order of the District Court is VACATED, and the case is REMANDED to the District Court for further proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*[signature and seal]*